KLINGERIT, INC. *v.* UNITED STATES

No. 5734.—Invoices dated Gumpoldskirchen, Austria, June 2, 1937, etc.
Entered at New York, N. Y., June 17, 1937, etc.
Entry No. 77503, etc.

(Order dated October 14, 1942)

B. A. Levett for the plaintiff.

Paul P. Rao, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

WALKER, Judge: This cause comes before the court on a motion to quash a subpoena *duces tecum* issued by order of the court directing Paul P. Rao, Assistant Attorney General of the United States in charge of customs litigation, as such officer to appear before the court and produce certain documents in his possession. The facts leading up to the issuance of such subpoena are as follows:

The merchandise involved consists of certain asbestos goods imported from Austria in the year 1937 and before that country was taken over by Germany. Entry was made by adding certain amounts to the invoice value to represent the foreign-market value, but on appraisement further additions were made by the appraiser. Appeals to reappraisement were duly filed by the importer, and on March 9, 1942, the case came on for trial before me.

During the course of the trial, counsel for the plaintiff called to the stand Henry H. Crum, who, at the time of giving his testimony was an assistant appraiser at the port of New York, but who had, in the capacity of examiner of merchandise, passed the merchandise in question and made an advisory return to the appraiser, which, being approved, became the appraisement herein. Mr. Crum was asked by plaintiff's counsel:

Will you state in making your appraisement, whether it was based upon information you received from abroad in the form of a Special Agent's report?

and over objection by counsel for the defendant, which I overruled, he answered, "Yes, several reports." The following then occurred:

Q. Have you that report with you?—A. I haven't the reports here with me, no.

Q. Do you know where it is?—A. I presume the attorney has it.

Mr. LEVETT. I will ask the attorney to produce that report so I may offer it in evidence.

Mr. AUSTER. The Government will refuse to offer it to Counsel.

Mr. LEVETT. I would ask Your Honor to subpoena the report. It is here, and I would like to see it. The refusal of the Attorney, his refusal to produce that I think is the subject of a very grave question of ethics. The Government is here to find the truth. If they have the truth in that report, we are entitled to it.

Judge WALKER. What is your objection to producing it?

Mr. AUSTER. My objection is, that this Attorney has to prove his case, he has the laboring oar; he has the burden of proof, and he cannot come into court and ask the Government "What have you got? Give it to me and I will prove my case." Moreover if he wants them he can get them by serving subpoenas upon the Commissioner of Customs, or the Secretary of the Treasury, not upon Counsel. When these reports are in Counsel's possession, they are privileged communications between attorney and client.

Judge WALKER. Of course you can delay the proceeding, in order to give the opportunity to the importer to get that information.

Mr. AUSTER. No, I have my grave doubts about that, in any event. There happens to be a motion before the Presiding Judge in a case, where a subpoena was served on our office, and upon the examiner, and the examiner as I under-

stand took it up with his superior here, the Appraiser, who communicated with the Secretary of the Treasury. What the result of that motion is going to be, I do not know. I can give your Honor the case it is 139055–A. the case of Arthur H. Lehmann Co., Incorporated, vs. United States. The motion was made to quash in that case.

Mr. Levett. I can speak from my experience that it has been uniformly held where the report is here, the Government must produce it.

Mr. Auster. Let me have a citation.

Mr. Levett. In a case before Judge Fischer, with Mr. Strauss, I cannot recall the case.

Judge Walker. It is my information it is admissible if properly called into evidence, and if you wish to delay the proceedings Mr. Auster, that is all right. I think I will insist the document be presented, if a subpoena *duces tecum* or whatever it may be that is necessary, is submitted.

Mr. Auster. I will object to his request at this stage of the proceedings. I desire that Your Honor understand my position. I am not saying that I may not offer it of my own volition, but I do oppose this manner or means of obtaining it, and I am not going to be a party to it. I may decide to offer it myself, after I see how far, how much of a case he has, but I am not going to prove his case for him. That is up to him.

Judge Walker. He is proving it, or endeavoring to prove it. I will give you the opportunity to get the record by a proper subpoena. It may delay the hearing, but I will give you the opportunity because I think it is quite proper.

Mr. Auster. I will ask Your Honor not to make a hasty decision on this question, because I am convinced when Your Honor studies the law, you, Your Honor will agree with me, that he is not entitled to it.

Judge Walker. I will have to change my mind, because I am convinced now.

Mr. Levett. I regret the delay, but of course if Your Honor rules.

[R. pp. 13–16]

It will be noted from the foregoing that the attorney for the Government, who, it appears, had the documents in question in his physical possession at the time of trial, was originally asked to produce them. This, of course, did not have to be obeyed, the only penalty for failure to comply with the request being the opportunity on the part of the plaintiff to offer secondary evidence of the contents of the reports, which he was in no position to do.

Subsequently, and on April 7, 1942, upon application therefor by counsel for the plaintiff, I directed the issuance of two subpoenas *duces tecum*, one addressed to Hon. Paul P. Rao, Assistant Attorney General of the United States, and the other addressed to Charles B. Webb, Director of the Customs Information Exchange, requiring their presence at a hearing to be held before me on April 13, 1942, and the production of certain special agents' reports or copies thereof in relation to the merchandise at bar.

On April 10, 1942, a motion was made by Assistant Attorney General Rao to quash the subpoena *duces tecum* served upon him, seven reasons in support of the motion being advanced in a memorandum filed in connection with the motion.

These reasons may be summarized into four, as follows:

(1) To compel the defendant to produce the reports at this time would contravene the regular order of proof by forcing the defendant to submit his proof in advance of the establishment by the plaintiff of a *prima facie* case.

(2) Since the appraiser is empowered by the statute to appraise imported merchandise

\* \* \* by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration or other document to the contrary notwithstanding \* \* \*.

it would be illogical to require the Government to produce, for plaintiff's benefit, a particular document merely because such document might contain some isolated statement which, if considered alone, without other information within the appraiser's knowledge, might cast a shadow on the binding statutory presumption of correctness attaching to the appraisement and cause the burden of proof to shift to the defendant, contrary to the intent of Congress.

(3) The documents in question were obtained by the Assistant Attorney General in his capacity as attorney for the United States and constitute confidential privileged communications between attorney and client and would not be admissible unless the privilege was waived by the client.

(4) Valid regulations issued under statutory authority with respect to the custody, use, and preservation of such documents prohibit Government officials from disclosing the contents of confidential official reports contained in the records of the Treasury Department without the consent of the Department, and, in effect, make the Secretary of the Treasury the exclusive custodian thereof.

Finally, in an affidavit subsequently filed in support of the motion, Assistant Attorney General Rao stated:

That in his official capacity as attorney for the United States, Defendant, in the above entitled cases involving questions of dutiable value on importations of asbestos goods exported from Austria (Germany); affiant has received a letter dated June 5, 1942, signed by Herbert E. Gaston, Assistant Secretary of the Treasury, the original of which is hereto annexed, stating that reports of the Treasury Department representatives relating to the questions involved in these cases are confidential in nature "and that their disclosure at this time pursuant to the subpoena would be inimical to the public interest."

In view of the conclusion I have reached based upon the affidavit and letter referred to, discussion of the reasons advanced in the memorandum becomes unnecessary.

It cannot be denied that in some cases it may be essential for the proper carrying on of Governmental functions and in the public interest to require the nondisclosure of information contained in official documents. In such cases the service to the interests of justice, as

represented by the rights of the individual litigant, by the disclosure of such information, would be outweighed by the detriment to the interests of the public as a whole. It naturally follows that the determination of whether the document falls within this class must be left to the head of the executive department involved, as he has, in law, custody of the document although physical possession thereof may be elsewhere (5 USCA Sec. 22). His determination must be final and binding upon the courts. As was said by Judge Hay of this court in *Knauth, Nachod & Kuhne* v. *United States*, T. D. 32925:

> To compel a Cabinet officer to produce in court a letter or document which he asserts would be against public policy to disclose would be to defeat the very secrecy which the officer in the discharge of high public duties would have thrown around the letter or document in question, and without having it produced in court it would be impossible for the court to determine whether or not it was such a document. If the Secretary of the Treasury could be compelled to produce in court a communication which he asserts to be confidential, and which it would be against public policy to produce, then the Secretary of State could be so compelled, and important diplomatic matters depending for their success entirely upon the discretion and secrecy with which they are conducted might be given that publicity which properly surrounds all judicial procedure. The very statement of such a proposition carries its own answer.

It is understood, of course, that the right to make this determination carries with it the grave obligation to restrict its exercise only to proper cases and to refrain from using it merely to overreach or to defeat the ends of justice.

As has been heretofore stated, a letter addressed to Assistant Attorney General Rao and signed by Herbert E. Gaston, Assistant Secretary of the Treasury, has been offered to the court in connection with the Assistant Attorney General's affidavit in support of the motion to quash. In the letter the Assistant Secretary says in part:

> This Department has determined that the official reports of investigations in question are confidential and intended only for the official use of the customs service, and that their disclosure at this time pursuant to the subpoena would be inimical to the public interest.

It is, of course, to be noted that the foregoing letter was signed by the Assistant Secretary of the Treasury and it is stated therein that the "Department" has determined, etc. Whether the power to exercise discretion in preventing the disclosure of information such as that sought here to be obtained may be delegated is a question which has not been raised heretofore. I note that in the case of *Boske* v. *Comingore*, 177 U. S. 459, cited by the defendant, the ruling was said to have been made "by the Secretary of the Treasury through the Commissioner of Internal Revenue," although in the last paragraph of the decision the court indicates that such determinations were reserved for the Secretary of the Treasury. In the case of *Knauth, Nachod & Kuhne* v. *United States*, cited above, the letter there

offered came, as here, from the Assistant Secretary of the Treasury. In the case of *Ex Parte Sackett*, 74 F. (2nd) 922, also cited by the defendant, involving a similar situation concerning records of the Department of Justice, it appears that the special order prohibiting the subpoenaed official from producing the papers was issued by the Attorney General, although it is noted that the regulations of that Department on the subject as quoted in the margin of the decision as reported vest the discretion in the "Attorney General or an Assistant Attorney General acting for him." In this connection see also 31 CFR, 1938 Supp., 1.1 to 1.7, being the general regulations of the Treasury Department on the subject.

Under the circumstances, I will accept the letter of the Assistant Secretary of the Treasury as transmitting the determination of the Secretary of the Treasury that the disclosure of the information contained in the documents in question pursuant to the subpoena would be inimical to the public interest. The motion to quash the subpoena served upon Assistant Attorney General Rao is therefore granted, and in view of the fact that the subpoena issued to Mr. Webb relates to the same documents, although there is at present no motion before me to quash that subpoena, I, on my own motion, quash the same.

At the time both of the officers subpoenaed appeared before me and argument was had on the motion to quash, it was agreed that, so far as the merits of the case were concerned, it should be continued. I therefore direct that it be placed upon my reappraisement calendar for November 1942.