(A.R.D. 104)

In the matter of the adjudication of the guilt of

Samuel D. Spector

of contempt of court

Samuel D. Spector, Appellant

SECOND DIVISION, APPELLATE TERM

(Decided April 6, 1959)

*George Cochran Doub*, Assistant Attorney General (*Alan S. Rosenthal, William A. Montgomery*, and *Richard E. FitzGibbon* of counsel), for the appellant.

*J. Bradley Colburn, John D. Rode*, and *Thomas J. McKenna* as *amici curiae*.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., dissenting

FORD, Judge: This is an application for review of the certificate, adjudication, and order of Judge Irvin C. Mollison, summarily adjudging the appellant, Samuel D. Spector, guilty of criminal contempt, under title 18, U.S.C.; section 401 and rule 42(a) of Federal Rules of Criminal Procedure, filed under the provisions of title 28, U.S.C., section 2636.

The proceeding had herein and the procedure followed are unique in this highly specialized field of customs jurisprudence. As far as research reveals, there is no published decision of this tribunal or of its predecessor, the Board of General Appraisers, which was created in 1890, involving a similar adjudication, nor is the appellate procedure to be followed in cases of contempt of court elsewhere specifically set forth.

Some enlightenment on the issues involved herein may be found in a brief review of the history of this court and the field of customs jurisprudence in general.

It is interesting to observe that, within 70 hours after the First Congress convened, James Madison introduced a bill, which subsequently became the Tariff Act of July 4, 1789, 1 Stat. 24. This was the second law passed by the First Congress, being preceded only by a statute establishing the requirements for the time and manner of taking certain oaths. The act prescribed the rate and amount of duty to be levied against specific items of imported merchandise, but made no provision for the recovery of duties erroneously assessed.

Later legislation establishing the procedures for the collection of import revenues and altering existing schedules of dutiable items was similarly silent upon the matter of the rights of importers.

Litigation for the recovery of customs duties nevertheless ensued. In the absence of statutory provisions and by a process of judicial construction of settled British precedent, with particular reference to the cases of *Irving J. Wilson et al.*, 4 Term Rep. 485, and *Ripley* v. *Gelston*, 9 John 201, the Supreme Court developed a formula to protect the fundamental right of an importer to judicial review. In the cases of *Elliott* v. *Swartwout*, 10 Pet. 137, and *Bend* v. *Hoyt*, 13 Pet. 263, it was held the common law remedy of *assumpsit* would lie in a State court against a collector of customs for assessing an erroneous rate or amount of import taxes and that the liability of the collector was a personal one.

Thus, prior to 1839, an importer paying duties claimed to have been wrongfully exacted had a common law right of action against the collector of customs. To protect himself against the personal liability judicially imposed upon him, each collector of customs proceeded to retain in his own custody large sums of money paid to him under protest. This action upon the part of the collectors operated to deprive the Government of current and continuing revenues. It became an evil so marked as to impel corrective measures by the Congress. By Act of March 3, 1839, Congress directed that all monies paid to any collector of customs be deposited to the credit of the Treasurer of the United States and not held by him to abide the event of any suit.

In the case of *Carey* v. *Curtis*, 3 How. 236, the act of 1839 was interpreted as depriving an importer of his right of action in *assumpsit* against a collector for the recovery of duties alleged to have been erroneously or illegally exacted.

To overcome the effect of the decision in the cited case, Congress, by the Act of February 26, 1845, 5 Statutes at Large, 727, provided that nothing in the prior act should be construed as taking away or impairing the right of any person or persons to maintain a suit at law. This was the prevailing state of the law until June 30, 1864, when sections 2929–2932 of the Revised Statutes provided statutory procedures for judicial review.

On June 10, 1890, the so-called Customs Administrative Act, 26 Stat. 131, 51st Congress, 1st session, became a law. It was hailed as William McKinley's contribution to the science of the law. The act repealed sections 2929–2932, *supra*, setting forth new procedures for judicial review in customs litigation, and created the Board of General Appraisers, the predecessor of the United States Customs Court.

Prior to the comprehensive revisions embodied in the Customs Administrative Act of 1890, an importer was permitted to appeal from the decision of the local appraiser as to the value of his mer-

chandise to other appraisers and, in proper cases, to the Secretary of the Treasury. If dissatisfied with the decision of the Secretary of the Treasury, the interested party, upon payment under protest specifying the grounds of objection to the tax, was permitted to test the validity of the tax in the courts by a suit against the Government through the person of the collector.

The conditions under which judicial review was permitted were limited. The determination of the appraisers as to the dutiable value of the goods was conclusive and not reexaminable in a suit at law, provided the appraisers were selected in conformity with the statute, and, in appraising, acted within the scope of the powers conferred upon them. See *Auffmordt* v. *Hedden*, 137 U.S. 310, 34 L. ed. 674.

By virtue of section 13 of the act of June 10, 1890, *supra*, the importer was given the right to judicial review of an appraisement. The appeal for reappraisement was first heard by a single member of the Board of General Appraisers and, if either the importer or the collector was dissatisfied with the reappraisement, a review by a board of three general appraisers was authorized. The decision of the board of three general appraisers was final and conclusive upon all parties and not subject to review by the Circuit Court under section 15 of said act, which specifically permitted review as to the construction of the law and facts respecting the classification of the merchandise and the rate of duty imposed thereon under such classification. See *Passavant* v. *United States*, 148 U.S. 214, 37 L. ed. 426; *United States* v. *Klingenberg*, 153 U.S. 93. Subsequently, by virtue of the Act of August 5, 1909, 36 Stat. 105, 1143, 61st Congress, 1st session, the United States Court of Customs Appeals (now the United States Court of Customs and Patent Appeals) was created, having the exclusive jurisdiction, under section 29, Tariff Act of 1909, to review the decisions of the Board of General Appraisers with respect to the classification and rate of duty imposed upon imported merchandise. Not until the Tariff Act of 1922 was enacted, was the United States Court of Customs Appeals authorized to review decisions relating to value. Accordingly, today the United States Court of Customs and Patent Appeals has exclusive jurisdiction to review decisions of this court both with respect to the classification and proper dutiable value of merchandise. Its jurisdiction in the case of the value of imported merchandise is limited to questions of law only and may be invoked only after a division of three judges of the Customs Court has passed upon the issues of law and fact determined by the single judge sitting in reappraisement.

In the matter now before us for consideration, it appears that appellant, a trial attorney in the Customs Section, Civil Division, Department of Justice, was assigned to represent the United States in a reappraisement action brought by North American Asbestos Corp.

(*North American Asbestos Corp.* v. *United States*, reappraisement 298362–A). The merchandise involved in the case consisted of asbestos yarn imported from England. It had been appraised on the basis of the foreign value of such material, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. As the appraised value exceeded the entered value, an appeal for reappraisement was duly filed by the importer.

In a reappraisement proceeding, by virtue of the provisions contained in title 28, U.S.C., section 2633, there is a statutory presumption of correctness attaching to the appraised value. It is, therefore, incumbent upon the party challenging such appraisement to establish both the incorrectness of the appraised value and the correctness of the claimed value.

On December 8, 1958, this matter regularly appeared before Judge Irvin C. Mollison for trial. Counsel for the importer introduced into evidence an affidavit which, he alleged, established that no foreign or export value existed for the involved merchandise. In addition and apparently in an effort to obtain evidence to overcome the presumption of correctness, counsel for the importer had served upon the supervising agent in charge of the Customs Agency Service at New York a subpoena *duces tecum*, directing him to produce certain reports of investigations by Treasury representatives relating to the sale of merchandise imported by plaintiff during the period between 1955 and 1958 or to the sale of similar merchandise offered by the British firms of Turner & Newall or Turner Bros. Asbestos Co.

Appellant had in his possession, at the time of trial, a statement purporting to indicate that Mr. Lawrence Fleishman, the supervising agent in charge of the Customs Agency Service at New York, had no knowledge of said reports. The trial judge refused to take cognizance of this statement and directed that Mr. Fleishman personally appear.

Complying with the court's direction, the supervising agent appeared at the trial and testified in substance that neither he nor any member of his staff had any information about the requested reports. He stated that it was not customary for his office to obtain possession of reports of investigations, unless the investigations were initially instituted by his staff or related to a matter of interest to the Customs Agency Service at New York. Such was not the case in respect to the subpoenaed reports.

The examiner presently in charge of the line of merchandise involved in the case was also called to testify on the part of the plaintiff. Evidence was sought from him relative to the appraisement of the merchandise in issue, with particular reference to any information he possessed concerning the reports described in the subpoena *duces tecum*. The examiner testified that he recommended the merchandise

be appraised upon the basis of the foreign value of such yarn. When asked whether he was assisted to that conclusion by reports of foreign investigations, he stated that he was. He indicated that there were three such reports, two of which, relating to the years 1955 and 1956, were in his possession. The third report, covering the year 1957, was stated to be in the possession of appellant herein. The court thereupon directed the examiner to turn over to counsel for plaintiff the reports which he had retained. The examiner demurred to the court's ruling upon the ground that such reports could not be released without specific permission from the Bureau of Customs.[1] Upon being ordered by the court, nevertheless, to present the reports to counsel for the plaintiff, the witness acceded to the court's ruling.

Throughout the course of these proceedings, appellant made various and sundry objections to the admission into evidence of the reports in the possession of the examiner. He urged their inadmissibility upon the grounds of remoteness, since they related to the years 1955 and 1956, where as the merchandise in issue was exported in 1957. He contended the reports were privileged as confidential Government documents, as indicated by the legend appearing on the reports which reads as follows: "This information for official use only. Other distribution in any form without instruction from the Bureau is prohibited."

Counsel also cited the case of *Klingerit, Inc.* v. *United States*, 9 Cust. Ct. 648, Reap. Dec. 5734, and 11 Cust. Ct. 446, Reap. Dec. 5944, affirmed in 14 Cust. Ct. 435, Reap. Dec. 6159, as authority for his position that said reports were confidential. The additional ground of hearsay, since said reports were not certified, was also urged by the appellant. All objections of appellant were overruled.

The court subsequently repeatedly directed the appellant to turn over to it or to counsel for plaintiff the report in his possession covering the year 1957. Appellant each time respectfully declined to comply upon the grounds indicated, *supra*, with the exception of remoteness, but primarily and insistently upon the specific ground the report was held by him as a confidential communication and was privileged.

Appellant argued the question of the confidentiality of the reports was a matter which should once again be reexamined by an appellate tribunal, so that the issue might be finally determined. The court continued to press appellant to submit the report. Whereupon, and it appearing the noon recess was approaching, it then being 12:30 p.m., appellant requested the case be continued until 2:00 p.m. of the same day to afford him an opportunity to research the matter, to inquire into his rights, and, possibly, to obtain the permission of his

[1] 5 U.S.C., section 22; 31 C.F.R., sections 1.1 to 1.4; 19 C.F.R. (1953 ed.), sections 26.3 to 26.4; Customs Regulations (1954 ed.), sections 26.3 to 26.4.

superiors to release the report. The court denied the application and then and there did summarily adjudge appellant to be guilty of criminal contempt of court for failure to obey the lawful order of the court, an act committed in the actual presence of the court, during the trial of the case of *North American Asbestos Corp.* v. *United States*, reappraisement 298362–A. Appellant moved for a stay of execution to determine his position as an attorney, to seek permission of the Treasury Department to release the document, and for the purpose of appeal, which motion was summarily denied. A written order was then issued fining appellant $50 and, upon failure to pay, committing him to the custody of the marshal for a period of 5 days during the regular business hours of each day (with permission to be released temporarily each day for personal reasons upon his own recognizance).

In a memorandum to accompany the certificate, adjudication, and order, the trial judge specifically predicated the adjudication "solely upon the refusal of counsel to produce the report," after being ordered to do so on at least 11 different occasions.

Thereafter, an application for a stay of execution was duly granted by Judges Rao and Ford of the second division of this court pending the filing of an application for review under the provisions of title 28, U.S.C., section 2636. On December 18, 1958, an application for review was duly filed by appellant herein. On December 31, 1958, notice of intention to argue this matter was filed and the case was scheduled for argument.

When the matter was first scheduled for hearing, this court, *sua sponte*, invited J. Bradley Colburn, John D. Rode, and Thomas J. McKenna, esquires, to serve the court as *amici curiae*, under rule 35 of the Rules of the United States Customs Court, and granted to them time to file a brief presenting arguments upon all relevant issues.

In the brief filed by *amici curiae* in response to the court's invitation, it is urged in the first instance that appellant is not a proper party to file an application for review under the provisions of title 28, U.S.C., section 2636(a). Said section provides as follows:

(a) The decision of a single judge in a reappraisement proceeding shall be final and conclusive upon all parties unless within 30 days from the date it is filed with the collector of customs an application for its review is filed with or mailed to the Customs Court by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forwarded forthwith to such court.

It appears the application for review of the certificate, adjudication, and order of Judge Mollison was filed with the clerk of this court by George Cochran Doub, Assistant Attorney General, Civil Division, Customs Section, in his official capacity and by virtue of a

determination by the Attorney General of the United States that the interests of the United States and of the contemnor herein are coincidental in this proceeding and that a review of the trial court's adjudication would serve the best interests of the United States. The power of the Attorney General of the United States and of his duly authorized assistants to make that determination is expressly conferred by statute, title 5, U.S.C., section 316, and it has been held the exercise of that power rests solely within the discretion of the Attorney General of the United States. See *People ex rel. Woll, U.S. Attorney* v. *Graber, Judge*, 68 N.E. 2d 750, 394 Ill. 362, wherein the court stated:

The Attorney General of the United States is its chief law officer. He is the head of the Department of Justice (5 U.S.C.A. § 291), and all the functions of that department are to be exercised under his supervision and direction. The Department of Justice is one of the great executive departments established by congressional enactment and has charge, among other things, of the assertion and protection of the interests of the United States, when it or its officers are sued by others. McGrain v. Daugherty, 273 U.S. 135, 47 S. Ct. 319, 71 L. Ed. 580, 50 A.L.R.I. It is true that Congress had made no specific statement enumerating the general duties of the Attorney General, but it is seen from the entire chapter of the United States statutes which establishes and regulates the Department of Justice and from the various provisions of the Judicial Code that he has the authority and it is made his duty to have general control and supervision of all criminal prosecutions and also of all civil suits in which the United States is interested, whether such interest be the subject of attack or defense; and that he is at liberty to call upon the District Attorney in any district, as the official representative of the United States, to appear and protect and defend the interests of the government in any civil suit in which its interests are involved or might be jeopardized.

\* \* \* \* \* \* \*

While the Attorney General may not maintain an action solely for the vindication of private rights or the redress of private grievances in which the public has no interest and may not appear in any litigation upon behalf of a defendant except for the interests of the United States, we think it must be conceded that the above section authorizes the Attorney General to direct the appearance of a United States Attorney in any civil suit between private persons in which the interests of the United States are involved and vests the Attorney General with discretionary power to determine when the interests of the United States are actually involved in the litigation and require attention and protection. Neither the cited section nor any other provision in the Federal statutes prescribes rules to govern his action or interferes with his discretion in determining whether the interests of the United States are involved in a civil suit between private parties, and, if so, the necessity or propriety of the appearance therein of a United States Attorney.

By the provisions of title 5, U.S.C., section 296, it was provided that:

\* \* \* Assistant Attorney General \* \* \* shall have charge of the interests of the Government in all matters of reappraisement and classification of imported goods and of all litigation incident thereto, and shall represent the Government in all the courts and before all tribunals wherein the interests of the Government require such representation.

Although said section 296 was repealed by Reorganization Plan No. 4, section 2, effective June 20, 1953, 18 F.R. 3577, and the office of the Assistant Attorney General in Charge of Customs abolished, the duties and functions thereof were transferred to the Assistant Attorney General, Civil Division, by Department of Justice order of Herbert Brownell, Jr., Attorney General of the United States, dated June 20, 1953 (No. 16–53), with the express authorization to supervise "all matters relating to the reappraisement and classification of imported goods, and all litigation incident thereto."

That the Department of Justice may properly file an appeal from a decision of the United States Customs Court, notwithstanding the phraseology of 28 U.S.C., section 2636(a), *supra*, as it formerly read in section 501 of the Tariff Act of 1930, has been expressly determined by our appellate tribunal in the cases of *United States* v. *Paramount Publix Corp.*, 22 C.C.P.A. (Customs) 272, T.D. 47328, and *United States* v. *European Trading Co.*, 26 C.C.P.A. (Customs) 103, C.A.D. 1. In commenting upon the power of the Assistant Attorney General to file such appeal, the court, in the *Paramount Publix Corp.* case, *supra*, stated:

The Assistant Attorney General having taken this appeal, it will be presumed, in the absence of a showing to the contrary, that he acted, in so doing, under the supervision and control of the Attorney General. *General Dyestuff Corp.* v. *United States*, 21 C.C.P.A. (Customs) 89, T.D. 46409.

\* \* \* \* \* \* \*

In view of our conclusion, above stated, it does not seem necessary to examine the question whether the Department of Justice derived any authority herein by virtue of the order of the Acting Secretary of the Treasury, T.D. 46601, hereinbefore referred to. Being of opinion that he had ample authority by virtue of the said order of the President of June 10, 1933, it becomes unimportant whether said T.D. 46601 did or did not confer such authority upon him.

It seems equally clear that appellant herein is a party against whom the decision of the single judge would have become final and conclusive, in the absence of a timely appeal. It is to be observed that the provision permitting a review of a decision of a single judge, 28 U.S.C., section 2636(a), *supra*, states "in a reappraisement proceeding." It does not provide for a review of a decision "of a reappraisement proceeding." Accordingly, we are of opinion that had it been the intention of Congress to limit reviews to final determinations "of a reappraisement proceeding," the law would have so provided. The language involved herein is set forth in a clear and unambiguous manner and as such is not, in our opinion, subject to any other interpretation than that any interested person adversely affected by a final decision of a single judge rendered in a reappraisement proceeding might apply for review. That appellant is a person so affected hardly

needs to be stated, and, as will be developed, *infra*, the contempt adjudication derived from the jurisdiction possessed by the court in a reappraisement proceeding.

In view of the foregoing, it is our considered opinion that appellant is a proper party before this court and that the application for review of the decision of Judge Mollison was properly filed by the Assistant Attorney General, Civil Division, Customs Section.

It is also contended by *amici curiae* that section 501 of the Tariff Act of 1930, 28 U.S.C., section 2636, *supra*, does not vest jurisdiction in this division of the United States Customs Court to review a contempt adjudication. Counsel's position rests upon the proposition that, under settled law, a division of this court, consisting of three judges, may review only such decisions of a single judge sitting in reappraisement as relate to the determination of value, citing *Cox & Fahner et al.* v. *United States*, 31 C.C.P.A. (Customs) 141, C.A.D. 264.

In the cited case, the Court of Customs and Patent Appeals was asked to review a decision of a division of the United States Customs Court dismissing an application for review of a decision of a single judge restoring a reappraisement appeal to the docket for the introduction of further evidence. Although the court ultimately held the order of the single judge was interlocutory and, therefore, not an appealable decision, it also observed "* * * that the sole duty of the single judge under section 501, *supra*, is 'to determine the value of the merchandise.' That is the only decision of the single judge contemplated by the section from which an application for review may be filed."

It seems clear the issue of whether or not the order of the single judge was appealable could have been, and actually was, resolved by the determination of its interlocutory nature and that the court's decision did not rest upon the quoted statements respecting the sole duty of the single judge. The court itself suggests the character of said statements as *obiter dicta* by the introductory phrase, "It will be observed that." It is not to be supposed the court thereby intended to foreclose further consideration, when precisely presented to it, of the appealability of other orders of a single judge, which, though final in character, are not directly determinative of the value of imported merchandise.

That ordinarily a decision of a single judge sitting in reappraisement contemplates a determination of value is obvious from the very name and nature of the proceeding. However, if this were his only function, he would have no power to find a party guilty of contempt in such a proceeding. Yet, it cannot be denied that he possesses such power, expressly conferred by statute, 18 U.S.C., section 401, and rule

42(a) of the Federal Rules of Civil Procedure and that the imposition of a fine is a final judgment. *New Orleans* v. *The Steamship Company*, 20 Wall. 387, 22 L. ed. 354; *Lester* v. *Berkowitz*, 17 N.E. 706, 125 Ill. 307.

Moreover, in the course of a reappraisement proceeding, there may be other orders and rulings which are in fact collateral or incidental to the ultimate issue of value, but, nevertheless, final and conclusive upon the parties, in the absence of an immediate and direct appeal. The question, therefore, presented is whether "a decision in a reappraisement proceeding" is limited to a determination of value or may include other final decisions which may be incidental to such a proceeding. This issue appears to be answered in a recent decision of this division, *S. H. Kress & Co. et al.* v. *United States*, 42 Cust. Ct. 698, A.R.D. 99, wherein an order of a single judge denying a motion to vacate an abandonment of a reappraisement action was affirmed.

Since the decision in the *Cox & Fahner* case, *supra*, rests upon the principle that an interlocutory order is not appealable, it may not be construed as determining the question of the appealability of a final decision, or as barring appeals from conclusive dispositions of substantive rights. The cases of *United States* v. *Thalson Co.*, 29 Cust. Ct. 545, A.R.D. 5, and *United States* v. *Nicholas Gal (Globe Shipping Co., Inc.)*, 30 Cust. Ct. 589, A.R.D. 15, cited by *amici curiae*, also involved interlocutory orders and are, therefore, distinguishable for the reasons given in the foregoing analysis of the *Cox & Fahner* case, *supra*. Accordingly, we do not regard as settled the question of whether a final decision of a single judge which does not determine the value of the imported merchandise is appealable.

The appellate jurisdiction possessed by this court is conferred by 28 U.S.C., section 2636(b), wherein the following is provided:

(b) The chief judge of the Customs Court shall assign every application for review of the decision of a single judge of such court in a reappraisement proceeding to a division of three judges who shall consider the case upon the samples of the merchandise, if any, and the record made before the single judge. The division shall, after hearing argument on the part of any of the interested parties requesting to be heard, affirm, reverse, or modify the decision of the single judge or remand the case to such judge for further proceedings, and shall render its decision in writing, together with a statement of the reasons therefor and of the facts on which the decision is based, and shall forward it to the collector of customs.

It will be noted that the section directs the division, after hearing argument on the part of any of the interested parties, to affirm, reverse, or modify the "decision" of the single judge in a reappraisement proceeding. Nothing contained therein expressly or by implication limits that "decision" to a determination of value. Had the statute utilized the phrase "of the reappraisement proceeding," we would

agree such language has the implication that the decision appealed from must be one determining value.

To apply the narrow construction of the *Cox & Fahner* case, *supra*, urged by *amici curiae* with respect to the decision of the single judge, is to contravene the guiding principle that statutes conferring the right to appeal should be liberally construed. So eminent an authority as Sutherland Statutory Construction, 3d edition, volume 3, section 6802, suggests:

An interpretation of a procedural statute which insures that a case will be considered on its merits so that substantive rights will be presented is to be highly preferred. Mere technicalities should not be permitted to impede the trial of a case, and so an interpretation which is highly technical, or results in absurdity or injustice is to be avoided. * * * However, an interpretation allowing one litigant to take advantage of, or cast harsh burdens upon the other is not to be desired, and a construction which will avert bias and secure a fair trial is to be highly favored. The other aids of interpretation, of course, must be given full consideration in effectuating the legislative intent.

Particularly with respect to the interpretation of statutes granting rights of appeal, it is therein stated, in section 6807:

Statutes giving the right of appeal are liberally construed in furtherance of justice, and an interpretation which will work a forfeiture of that right is not favored. * * * Likewise, an interpretation limiting the cases from which an appeal may be brought, or the persons who may bring an appeal is not preferred.

American Jurisprudence, under the heading "Appeal and Error" also favors this view. In 2 Am. Jur., "Appeal and Error," section 7, it is stated:

Statutes giving and regulating the right of appeal are recognized as remedial in their nature and should receive a liberal construction in furtherance of the right of appeal. In accordance with this principle, where the right of appeal or to a writ of error is given in general terms by one statute, another statute dealing with the review of particular proceedings and granting the right to appeal or to a writ of error to one party will not be deemed exclusive so as to prevent a review by the party not mentioned. Where the jurisdiction is described in general terms so as to comprehend a particular case, no presumption can be indulged of an intention to oust or to restrict such jurisdiction. Nevertheless, there must be a compliance with the material conditions imposed by the statute. * * *

We are, of course, aware of the proposition that appellate jurisdiction may not be inferred, but must be conferred. However, a statutory provision authorizing appeal ought not be construed in derogation of such authority, if, by any reasonable interpretation, the right may be preserved.

The case of *Carroll et al.* v. *United States*, 354 U.S. 394, is cited in the brief of *amici curiae* as standing for the principle that for appellate jurisdiction to exist there must be "a clear statutory man-

date." [1] We are, of course, in full accord with the principle so prudently established by the United States Supreme Court. However, it does not seem that the rule of the case demands the broad interpretation urged by counsel. The *Carroll* case, *supra*, involved an issue vastly different from that with which we are here concerned.

Pending before the Supreme Court was an appeal from a decision of the Court of Appeals for the District of Columbia Circuit, reversing a decision of the District Court granting a motion to suppress evidence under rule 41(c) of the Federal Rules of Criminal Procedure. The motion was made after indictment but before the trial on the merits of a charge of violation of a local lottery law. The Supreme Court reversed the Court of Appeals primarily upon the ground that the decision of the District Court on the motion was interlocutory and, therefore, not appealable under the general provisions for appeals from District Court decisions, as set forth in 28 U.S.C., sections 1291 and 1292. Another element taken into consideration was the fact that the appeal was prosecuted by the Government, which, by statute (18 U.S.C., section 3731), is restricted in the matter of appeals in criminal cases.

Particularly pertinent are the following portions of the decision in the *Carroll* case, *supra*:

\* \* \* As the opinion by Mr. Justice Brandeis explains, the denial of a pre-trial motion in this posture is interlocutory in form and real effect, and thus not appealable at the instance of the defendant. We think the granting of such a motion also has an interlocutory character, and therefore cannot be the subject of an appeal by the Government. \* \* \* To fit an order granting suppression before trial in a criminal case into the category of "final decisions" requires a straining that is not permissible in the light of the principles and the history concerning criminal appeals, especially Government appeals that are outlined above and more fully set forth in the cases cited. Other Courts of Appeals that have considered the problem have concluded that this order is not "final" or appealable at the behest of the Government.

\* \* \* Many interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily reviewable. In particular is this true of the Government in a criminal case, for there is no authority today for interlocutory appeals, and even if the Government had a general right to review upon an adverse conclusion of a case after trial, much of what it might complain of would have been swallowed up in the sanctity of the jury's verdict.

\* \* \* our holding is that the statutory provisions applicable to the District of Columbia, subject to the further limitations stated therein, afford the Govern-

---

[1] The following quotation is cited: "It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute. And since the jurisdictional statutes, prevailing at any given time are so much a product of the whole history of both growth and limitation of federal-court jurisdiction since the First Judiciary Act, 1 Stat. 73, they have always been interpreted in the light of that history and of the axiom that clear statutory mandate must exist to found jurisdiction."

ment an appeal only from an order against it which terminates a prosecution or makes a decision whose distinct or plenary character meets the standards of the precedents applicable to finality problems in all federal courts.

Thus, it appears that both the *Cox & Fahner* and *Carroll* cases, *supra*, were concerned with interlocutory orders. The strict construction of the relevant statutory authority to appeal, in both instances, hinges upon the fact that the decision sought to be reviewed was interlocutory in nature. The rule of law which operates to cut off appeals from nonfinal adjudications, unless otherwise expressly provided for, ought not, in the interests of justice and fairness, be extended to final determinations of substantive rights. The reason for the rule in the case of interlocutory orders is the avoidance of a multiplicity of appeals, in instances where the issues decided can be preserved and presented to the appellate tribunal at any time. Consequently, statutes granting the right of appeal in such cases have always been strictly construed. Where, however, the consequences of an adjudication are an immediate and final disposition, irremediable except by an immediate appeal, the more liberal view, as expressed in Sutherland and American Jurisprudence, *supra*, seems dictated.

In the case at bar, there can be no doubt that the instant order of the trial judge was a final determination.

Following the above premises, and from the history of this field of law, it is evident that Congress has progressively liberalized the rights of importers to judicial review of decisions of appraisers and collectors, and to appellate reconsideration of the trial court's deliberations. Jurisdiction in matters involving customs was exclusively granted to this court and to the Court of Customs and Patent Appeals to the end that a complete but self-containing system of corrective justice be projected.

Congress provided, within this specialized framework, for the right to appeal a final decision of a single judge sitting in reappraisement to an appellate division of three judges of this court, first, in section 501 of the Tariff Act of 1922, again, in section 501 of the Tariff Act of 1930, and, lastly, in title 28, U.S.C., section 2636(b). The decision of the appellate division of this court is the only decision in a reappraisement proceeding that may be reviewed by the United States Court of Customs and Patent Appeals. That tribunal lacks jurisdiction to review a decision of a single judge sitting in reappraisement proceedings. *W. X. Huber Co. (J. J. Kessler)* v. *United States*, 21 C.C.P.A. (Customs) 30, T.D. 46366. Indeed, so far as research reveals there has never been a successful appeal from a decision of a single judge of this court or its predecessor, the Board of General Appraisers, to the United States Court of Customs and Patent Appeals or any other tribunal.

A consideration of the foregoing and the phraseology of the appellate procedures described in section 2636, *supra*, leads us to the conclusion that a contempt adjudication is a decision of a single judge in a reappraisement proceeding, which this division has jurisdiction to review.

In the sense that a judgment of criminal contempt transcends the ordinary functions of the single judge in a reappraisement proceeding, and is a determination of guilt of criminal or quasi-criminal action, it is, of course, an independent adjudication. But whether a judgment of contempt be considered as a separate cause or as part of the main cause, it is clear that it must result from the courts' having jurisdiction over the main cause. No decision can be made in a vacuum. Every decision depends for its validity upon jurisdiction over the person or the proceeding.

As a necessary adjunct to the disposition of issuable facts properly raised before a trial court, there exists the power to conduct an orderly procedure, to compel the attendance of witnesses, and to punish for contempt. These powers, although inherent, are incidental to the court's jurisdiction over the proceeding. Thus, in the matter of the contempt finding herein, the power to make the adjudication derived from the statutory authority conferred upon Judge Mollison to sit as a single judge in a reappraisement proceeding for the purpose of determining the value of the merchandise before him. It was incident to the exercise of the special jurisdiction this court possesses over reappraisement proceedings. It apparently resulted from the court's desire to prevent the suppression of evidence, which was deemed material and necessary to the judicial determination of the value of the subject merchandise. Therefore, whether or not by abstract legal concept, contempt proceedings are separate controversies, the instant adjudication was so inextricably bound up with the main cause of action, as to be, for the purposes of this appeal, a decision of a single judge in a reappraisement proceeding.

We are, accordingly, of the opinion that section 2636(b), *supra*, should, in the interests of justice, be liberally interpreted to preserve a litigant's right of appeal. We are necessarily of this opinion in such a case as is now before us, because it is inconceivable that a summary conviction of criminal contempt should be allowed to stand without review. Since, under the statutory framework for appellate procedure in customs jurisprudence, a decision of a single judge of this court is not appealable to the Court of Customs and Patent Appeals, a denial of jurisdiction by this tribunal would leave appellant without opportunity to obtain judicial review of his summary conviction.

We are loathe to assume that the procedures so wisely provided by the Congress for the review of decisions of this court should be

construed as denying a right of appeal from any final decision, whether it be that of a single judge or of a division of three judges. From what we believe to be the underlying purpose and intent of Congress in the comprehensive structure of a separate and exclusive customs forum with variation in appellate procedures as between classification and reappraisement matters, we are of the opinion that this court has jurisdiction to review any final decision made by a single judge in a reappraisement action, whether it relates to the determination of value, or to a collateral or incidental issue arising during the course of that action. Any other construction would, in our opinion, thwart the plan of corrective justice within the framework of the specialized courts, created by Congress. It is, therefore, proper for this court to review the certificate, adjudication, and order now before us.

It appearing that this court possesses jurisdiction to review the action of the single judge in this matter, we shall now consider the merits of his finding.

Appellant contends the exercise by the trial judge of the summary power to punish for criminal contempt constituted, under the circumstances of this case, a gross abuse of discretion. It is further urged that had the trial judge invoked merely the power to find appellant guilty of civil contempt his action would have amounted to an abuse of discretion, unless and except a token order had been entered. These arguments rest upon the premise that appellant's behavior toward the court, though firm in the refusal to submit the evidence demanded, was at all times respectful, and since he was motivated by the sincere belief that regulations of the Department of Justice and of the Treasury Department required him to regard that evidence as confidential, his actions could not be interpreted as contemptuous.

The submission of reports of Treasury representatives and other Government officials in reappraisement proceedings is a recognized practice of long standing. Ordinarily possessing the character of hearsay evidence and, hence, generally inadmissible, such reports are an exception to the hearsay rule under congressional fiat. The admission of such evidence was first specifically authorized by section 501 of the Tariff Act of 1922. Reenacted in section 501 of the Tariff Act of 1930, now codified as 28 U.S.C., section 2633, the provision reads as follows:

In finding the value of merchandise, in reappraisement proceedings before a single judge of the Customs Court, affidavits and depositions of persons whose attendance cannot reasonably be had, price lists and catalogues, reports or depositions of consuls, custom agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be admitted in evidence. Copies of official documents, when certified by an official duly authorized by

the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

It is not our purpose here to decide whether the claim of privilege attaches to such reports, nor do we consider the resolution of that question pertinent to this appeal. However, the court is disposed to make certain observations in relation thereto. As indicated, *supra*, such reports have been admissible in evidence since at least 1922 and, in the ensuing years, have, for the most part, been offered by the Government in support of its position in a pending reappraisement proceeding.

Numerous cases arising under the Tariff Acts of 1922 and 1930 have determined the weight to be given such reports, their admissibility, when uncertified, and various and sundry other problems in connection therewith not here pertinent. It does not appear, however, that an issue involving an attempt by an importer to utilize such reports occupied the attention of the courts prior to the case of *Knauth, Nachod & Kuhne et al.* v. *United States*, 23 Treas. Dec. 342, T.D. 32925, decided in 1912. So far as our research reveals, the next reported decision bearing upon the question was the *Klingerit* case, *supra*.

In the *Knauth, Nachod & Kuhne* case, *supra*, the Board of General Appraisers (now the United States Customs Court), at the request of counsel for the importer, caused a subpoena *duces tecum* to be issued and served upon the Secretary of the Treasury directing him to produce a certain Treasury Department report. The Assistant Attorney General appearing on behalf of the United States submitted a letter from the Assistant Secretary of the Treasury stating that the report in question was a confidential communication and that it would be against public policy to produce it. Upon the authority of prior adjudications with respect to confidential communications, the court quashed the subpoena.

In the *Klingerit* case, *supra*, counsel for the importer secured the issuance of a subpoena *duces tecum* directing the Assistant Attorney General in Charge of Customs and the Director of the Customs Information Exchange, respectively, to produce certain special agents' reports, which appeared to have been relied upon by the examiner in making his advisory return of value to the appraiser. Motion was made on behalf of the United States to quash the subpoena directed to the Assistant Attorney General. In support of the motion, there was presented a letter from the Assistant Secretary of the Treasury to the Director of the Customs Information Exchange which indicated the disclosure of the information contained in the document sought

to be produced "would be inimical to the public interest." The trial judge thereupon quashed the subpoena, which action was affirmed on appeal.

No subsequent customs case has altered the rule of the *Klingerit* decision, *supra*, that the disclosure of confidential governmental information will not be compelled, if it be shown that to do so will contravene the public interest. Nevertheless, the claim of privilege ought not to be lightly asserted. It is the duty of the Department of Justice, in representing the United States on customs litigation, to see that justice is done. When all the facts in the case are freely and fully presented to the court, a judgment unfavorable to the Government is of little moment, since justice has been done.[1] Whatever may be the duties of Government attorneys in other Federal departments, the attorneys representing the United States before this court have but one function to fulfill and that is to present the facts in the case to the best of their ability, in order to protect the revenue of the United States. Revenue determined to be erroneously or illegally exacted is not lawful revenue which the Department of Justice should be required to defend.

With this principle in mind, the courts have not been disposed to place their stamp of approval upon the indiscriminate withholding of Government reports. Accordingly, in the case of *K. Igudhi* v. *United States*, 4 Cust. Ct. 551, Reap. Dec. 4698, it was held that when it comes to the attention of the court that the Government has in its possession a report which is not offered in evidence, it may be assumed its contents are unfavorable to the Government's case and favorable to the importer. In its decision, the court stated:

\* \* \* With reference to the inference that must be drawn in a case where a party fails to produce evidence within his knowledge and power, 22 Corpus Juris 111, says:

The failure of a party to produce evidence which is within his knowledge, which he has power to produce, and which he would naturally produce if it were favorable to him, gives rise to an inference that if such evidence were produced it would be unfavorable to him; \* \* \*.

To the same effect is the holding of the Circuit Court of Appeals for the Eighth Circuit, in the case of *Choctaw* v. *Newton*, 140 Fed. 225, as follows:

Where a party has the means of producing testimony within his knowledge or keeping upon a material question involved in the case, and fails to do so, the presumption arises that the fact is against him. Gulf, etc. Ry. Co. v. Ellis, 54 Fed. 481, 483, 4 C.C.A. 454; Clifton v. United States, 4 How. 242, 244, 11 L. Ed. 957; Graves v. United States, 150 U.S. 120, 14 Sup. Ct. 40, 37 L. Ed. 1021; Runkle v. Burnham, 153 U.S. 216, 225, 14 Sup. Ct. 837, 38 L. Ed. 694; Kirby v. Talmadge, 160 U.S. 379, 383, 16 Sup. Ct. 349, 40 L. Ed. 463.

---

[1] In the case of *United States* v. *Kid and Watson*, 8 U.S. 1, importations under the Tariff Acts of July 20, 1789, and August 10, 1790 (first and second tariff acts of the United States), the Attorney General confessed judgment for the importer.

The above principles were again pronounced in the case of *Wylde* v. *Cowin*, 250 Fed. 403, wherein the Circuit Court of Appeals, First Circuit, used the following language:

> The failure, unexplained, to produce evidence which is in the possession of a party, raises a presumption that if produced, it would not be favorable to the contention of the party possessing it.

Again in the case of *Atchison, etc. R. Co.* v. *Davis*, 26 Okl. 359, 364, 109 P. 551, the law is stated in the following language:

> When the circumstances in proof on the part of the plaintiff tend to fix a liability on the defendant who has it in his power to offer evidence of all the facts as they existed and rebut the inferences which the circumstances of the facts proved tend to establish, and he fails to offer such proof, the natural conclusion is that such proof, if produced, instead of rebutting, would support the inferences against the defendant, and the jury is justified in acting upon such conclusion.

The withholding of agents' reports when favorable to the importer and the offering of reports when favorable to the Government not only place the Government in an inconsistent position but tend to frustrate the precepts of due process of law and the orderly administration of justice. To withhold the reports of Government agents where such reports adduce information or establish material facts favorable to the importer is but to compound the illegal exaction in the first instance. These reports, which every member of this court has had occasion to review in the many reappraisement cases tried before them, are merely commercial reports containing no information which would, in the normal course of events, affect the safety or security of our Nation.

We would, therefore, have considerable reservation if the matter were now before us in holding that such reports may be suppressed as evidence upon a claim of privilege when their production is sought by the importer pursuant to a subpoena *duces tecum*, or is ordered by the court, *sua sponte*, notwithstanding the decisions in the *Knauth*, *Nachod & Kuhne* and *Klingerit* cases, *supra*. If, however, it were satisfactorily established that said report did contain information which would be injurious to the safety or security of the Nation, we would, of course, find the reports to be privileged.

But whether or not the refusal to produce such reports under the claim of departmental restrictions and the purport of settled law, constitutes contemptuous behavior, is quite another matter. The propriety of the contempt adjudication, in this instance, does not depend upon our present attitude as to the confidential status of Treasury reports. It must be determined by a consideration of all the circumstances leading up to the finding that criminal contempt had been committed. The appellant, in the performance of his duty as a trial attorney in the office of the Assistant Attorney General, Civil Division,

Customs Section, has been found guilty of criminal contempt under the provisions of title 18, U.S.C., section 401, and rule 42(a) of Federal Rules of Criminal Procedure, for refusal, in the presence of the court, to obey an order of the trial judge to turn over a report of the nature discussed, *supra.* From the record and the order, it is clear that appellant did not commit any act, other than that recited in the order of contempt, which was personally disrespectful to the court. It, therefore, appears that appellant's refusal to comply with the order of the court was not personal but stemmed from a position long since apparently sanctioned by this court, as indicated by the *Knauth, Nachod & Kuhne* and *Klingerit* cases, *supra,* which he apparently felt, whether or not his interpretation was correct, legally entitled him to decline to obey the order of the court. We are, of course, aware that an attorney's belief that the rulings of the court are erroneous does not relieve him of his duty and obligation to comply with an order of the court. It may, however, be taken into consideration as a mitigating factor in the imposition of the sentence and in the determination of whether the contempt be civil or criminal.

It is unfortunate that this matter could not have been handled in such manner as to bring the legal question of the admissibility of the confidential reports on behalf of plaintiff to the appellate courts for determination. The position of our distinguished colleague with respect to the confidentiality of the Treasury agents' reports, is, in our opinion, meritorious as indicated in our discussion of the matter, *supra.* However, had the trial court permitted appellant to confer with his superiors or the Treasury Department, he might well have obtained the authorization to comply with the court's direction, and the substantive question might then have been raised in less convulsive fashion. That appellant clearly realized the hazardous results of the course he felt obliged to pursue and the personal danger to which he was exposing himself, was evidenced by the fact that he requested a brief continuance during the noon recess for the purpose of researching the problem or, in the alternative, of consulting with his superiors, to the end that permission to release the report might be obtained. Nevertheless, the court below denied the request and summarily adjudged the appellant guilty of criminal contempt.

The power of this court to punish for contempt may not now be questioned, *T. W. Holt & Company* v. *United States,* 41 C.C.P.A. (Customs) 8, C.A.D. 522. Neither is there doubt that the power to punish for criminal contempt may be summarily exercised, in view of rule 42(a) of Federal Rules of Criminal Procedure. But the possession of the power does not sanction its arbitrary use. Indeed, the Supreme Court has expressly affirmed a cautious approach to the exercise of this plenary power.

In the case of *Cooke* v. *United States*, 267 U.S. 517, at page 539, the Court made the following observation:

Another feature of this case seems to call for remark. The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court is most important and indispensable. But its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions. * * *

Quite recently, in the case of *Offutt* v. *United States*, 348 U.S. 11, at pages 13–14, the Court stated its reasons for accepting the case and commented on the applicability of rule 42(a), *supra*, in the following terms:

In view of this Court's "supervisory authority over the administration of criminal justice in the federal courts," *McNabb* v. *United States*, 318 U.S. 332, 341, and the importance of assuring alert self-restraint in the exercise by district judges of the summary power for punishing contempt, we brought the case here. 347 U.S. 932.

We shall not retrace the ground so recently covered in the *Sacher* case, *supra* [*Sacher* v. *United States*, 343 U.S. 1]. In enforcing Rule 42(a), the Court in that case emphasized its duty to safeguard two indispensable conditions to the fair administration of criminal justice: (1) counsel must be protected in the right of an accused to "fearless, vigorous and effective" advocacy, no matter how unpopular the cause in which it is employed; (2) equally so will this Court "protect the processes of orderly trial, which is the supreme object of the lawyer's calling." 343 U.S., at 13–14. Rule 42(a) was not an innovation. It did not confer power upon district judges not possessed prior to March 21, 1946. 327 U.S. 821. "This rule," the Advisory Committee on the rules of criminal procedure stated, "is substantially a restatement of existing law, *Ex parte Terry*, 128 U.S. 289; *Cooke* v. *United States*, 267 U.S. 517, 534." The pith of this rather extraordinary power to punish without the formalities required by the Bill of Rights for the prosecution of federal crimes generally, is that the necessities of the administration of justice require such summary dealing with obstructions to it. It is a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage.

The caveat of the Supreme Court may not be ignored by lower Federal tribunals in the exercise of the power to summarily punish for criminal contempt. Recognition of its extraordinary character in dispensing with fundamental rights guaranteed by the Constitution must prompt the courts to use it sparingly, and only when essential to vindicate public authority, as personified by the courts for acts committed against the majesty of the law. It would seem the actions of appellant in this case were not of this nature.

It is clear that the claim of the confidentiality of investigation reports has been a known and consistent position of the Government for upwards of 46 years, as indicated by the *Knauth, Nachod & Kuhne* case, *supra*, and again by the *Klingerit* decision, *supra*. It is equally clear that appellant's actions were consistent with the position and were demonstrably stated to be in accordance with the directions

of his superiors. The color of right deriving from established law; the fact that the legal problem involving the reports was *bona fide* and not an illusory creation by appellant to sustain an arbitrary position; and the request of appellant for a continuance of 90 minutes from 12:30 p.m. for an opportunity to consult with his superiors were concomitants of good faith revealing no purpose to flout the majesty and dignity of public authority or the law, or to obstruct the administration of justice.

The recently decided case of *Garland* v. *Torre*, 259 F. 2d 545, cited by *amici curiae*, wherein the defendant was held in criminal contempt of court, is clearly distinguishable from the case at bar. In the *Garland* case, *supra*, the contemnor refused, for personal reasons, to comply with an order of the court. In addition, the decision to comply or refuse to comply with the order of the court was solely within the control of the contemnor who chose, for personal reasons, to maintain her silence. In the instant case, the contemnor did not refuse to comply with an order of this court for personal reasons. The contemnor was appearing as counsel for the United States and was merely performing his duty in following the rules and regulations of the Treasury Department and the orders of his superiors in the Department of Justice. It cannot, therefore, be said that the contemnor herein refused to comply with an order of this court, for personal reasons, nor did the control of the involved documents rest with him.

A subordinate who follows the directions of his superiors, particularly when backed by court decisions which stand as the law of the land, should not be subjected to the ignominy of an adjudication of criminal contempt. The denial of the request for the 90-minute continuance; the adjudging of appellant to be guilty of criminal contempt; and the refusal to grant a stay of execution requested for the purpose of reexamining the position taken by appellant and of ascertaining whether or not a release of the reports could be authorized by the Treasury Department do not appear to have been occasioned by the urgency of the case. After all the foregoing, the trial court continued the trial *sine die*.

It is our considered opinion that, by reason of all the facts and circumstances of the case, the summary adjudication of criminal contempt was an unwarranted action upon the part of the trial court constituting an abuse of discretion. The judgment of criminal contempt must, therefore, be reversed.

We make these further comments concerning the propriety of an adjudication of civil contempt under these premises. Civil contempt is a means of compelling a party to comply with an order of the court issued for the benefit of the opposing party. It contrasts with criminal contempt which is the vindication of public authority. In substance, the actual problem which, for all practical purposes, culmi-

nated in the finding of contempt was the confidentiality of Government agents' reports, originally subpoenaed by the plaintiff in the reappraisement proceeding. These reports were in final analysis evidence sought by a litigant. The order for the production of the documents was in aid of plaintiff's case. The refusal to produce upon the grounds asserted by appellant operated in derogation of plaintiff's rights. To the extent that appellant's behavior may have been deemed contumacious, the relief which the plaintiff desired could have been adequately secured by a finding of civil contempt.

Particularly appropriate to the matter involved herein is the language in the decision of the appeal of the *United States Securities and Exchange Commission*, 226 F. 2d 501 (C.A. 6), which reads as follows:

\* \* \* An attorney is entitled to consideration of a claimed privilege not to disclose information which he honestly regards as confidential and should not stand in danger of imprisonment for asserting respectfully what he considers to be lawful rights. If the attorney's position, in the opinion of the trial court, is wrong to the point of contempt, he should be so adjudged; but substantial justice would demand that he be given the benefit of counsel and an opportunity for review by an appellate court before being deprived of his liberty with the resultant ignominy.

For all of the foregoing reasons, it is difficult to imagine, even in a civil contempt, a holding beyond a *pro forma* detention while the necessary steps were taken for appellate review of the *bona fide* legal problem which occasioned the finding of contempt. See *Chapman* v. *Goodman* (9 Cir.), 219 F. 2d 802.

Accordingly, we are of the opinion that both the oral order and the written order adjudging and committing the appellant for contempt of court, must, in the interests of justice, be reversed and set aside; and it is directed that the appellant be completely absolved from any punishment for his alleged contempt.

Regrettable as this case may appear, it is hoped it may well bring about a final determination of the legal issue with respect to the confidentiality of Treasury representatives' reports, which is long overdue. Should a final determination be forthcoming, by reason of this matter, both Judge Mollison, an able and distinguished jurist, who has served on the bench of this court since 1945, and appellant, who has likewise had a long and distinguished career as a trial attorney for the Department of Justice, will have performed a valuable service to the field of customs jurisprudence.

Judgment will be entered accordingly.

### DISSENTING OPINION

LAWRENCE, Judge: It is my firm conviction that this court is without jurisdiction of these proceedings. Consequently, I shall not express any opinion on other phases of the matter.

It has been recognized from time immemorial that courts have an inherent power to punish for contempt. This is a necessary incident to the proper exercise of the judicial function; to compel obedience to the court's orders and processes and to maintain the dignity, prestige, and majesty of the court as an institution.

Jurisdiction, however, is a privilege which may be granted only by the sovereign power. It may not be inferred, presumed, or conferred by the litigants.

Moreover, a statutory grant of jurisdiction must be expressed in clear and unmistakable terms. As well stated in the case of *Carroll et al.* v. *United States*, 354 U.S. 394, 399—

It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute. And since the jurisdictional statutes prevailing at any given time are so much a product of the whole history of both growth and limitation of federal-court jurisdiction since the First Judiciary Act, 1 Stat. 73, they have always been interpreted in the light of that history and of the axiom that *clear statutory mandate must exist to found jurisdiction.* \* \* \* [Italics supplied.]

See also *Farnsworth* v. *Territory of Montana*, 129 U.S. 104, and *Cross* v. *United States*, 145 U.S. 571.

The contemnor-appellant seeks to invoke the jurisdiction of this court pursuant to title 28 U.S.C., section 2636, which reads, so far as pertinent here, as follows, certain portions being stressed—

§ 2636. Review of single judge's decision; disqualification of judges; remand; presumption

(a) The decision of a single judge in a reappraisement proceeding shall be final and conclusive upon all parties unless within 30 days from the date it is filed with the collector of customs an application for its review is filed with or mailed to the Customs Court *by the collector or other person authorized by the Secretary of the Treasury*, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forwarded forthwith to such court.

(b) The chief judge of the Customs Court shall assign every application for review of the decision of a single judge of such court in a reappraisement proceeding to a division of three judges who shall consider the case upon the samples of the merchandise, if any, and the record made before the single judge. The division shall, *after hearing argument on the part of any of the interested parties requesting to be heard*, affirm, reverse, or modify the decision of the single judge or remand the case to such judge for further proceedings, and shall render its decision in writing, together with a statement of the reasons therefor and of the facts on which the decision is based, and shall forward it to the collector of customs.

A careful examination of section 2636 fails to reveal the slightest indication of any "clear statutory mandate" extending the jurisdiction of this court to embrace criminal contempt reviews.

The history of the origin and development of this court clearly indicates that Congress did not clothe it with criminal jurisdiction. The court had its origin in the Board of General Appraisers, created by the Administrative Act of 1890 (26 Stat. 131, 136). By the Act of May 28, 1926 (44 Stat. (2) 699), the board became known as the United States Customs Court without any change in the jurisdiction, powers, and duties of said board, its subdivisions and its officers, and their appointment, including the designation of its presiding officers, and the immunities, tenure of office, powers, duties, rights, and privileges of the members of said board. On July 14, 1956, it was ordained a constitutional court pursuant to act of Congress (70 Stat. 532).

By the act of 1890, *supra*, there was lifted from the Federal circuit and district courts the civil side of customs jurisdiction relating to the valuation and classification of imported merchandise. However, all criminal jurisdiction relating to fines, penalties, smuggling, forfeiture, falsification of invoices, and so forth, remained with the Federal circuit and district courts.

It is interesting to note that, in the following year, Congress created the Circuit Courts of Appeals and specifically clothed them with appellate criminal jurisdiction not only with respect to capital or otherwise infamous crimes but also in all cases arising under the revenue and criminal laws, *inter alia*. This latter provision was held to give the Courts of Appeals jurisdiction over criminal contempt cases. *Bessette* v. *W. B. Conkey Company*, 194 U.S. 324. The Circuit Court of Appeals Act clearly indicates that when Congress intended to endow courts with criminal jurisdiction, it did so in unambiguous terms.

It is the primary duty of this court, as above indicated, to determine whether it has jurisdiction in this matter. In the event it should be decided that it is without jurisdiction, it would be idle to speculate as to where jurisdiction does lie. While it is highly desirable that there should be a review somewhere, it is, nevertheless, a prime requisite that such jurisdiction should be clearly expressed indicating what court may have jurisdiction. However harsh the result may be, if jurisdiction has not in fact been so expressed, the remedy lies with Congress and not by judicial legislation. The power which grants jurisdiction, of course, may withhold jurisdiction if it so desires and, in this connection, it is to be noted that under the common law there was no appeal in contempt cases (*Bessette* v. *W. B. Conkey Company*, *supra*).

Careful research, which is supported by historical and traditional considerations, clearly indicates that this court is without jurisdiction of these proceedings.

It seems not to be disputed that either the collector of customs "or other person authorized by the Secretary of the Treasury" may file an application for review of a reappraisement decision within the intent of 28 U.S.C., section 2636(a). In my view of the statute, they are the only persons who may file an application for review on behalf of the United States. Section 2636(a) finds its parallel in section 514 of the tariff act (19 U.S.C. § 1514), which specifies those persons who may file a protest against the decision of the collector of customs, namely, "the importer, consignee, or agent of the person paying such charge or exaction." Years ago, in determining the case of *Wm. H. Stiner & Son* v. *United States*, 28 Treas. Dec. 68, T.D. 35085, involving a like provision in subsection 14 of section 28 of the Tariff Act of 1909, the Board of General Appraisers summarized its views on this phase of the case in the syllabus of the decision as follows:

A protest signed "William H. Stiner & Sons, by Strauss & Hedges, attorneys," against the collector's assessment of duty on merchandise imported by P. E. Anderson & Co., in the absence of evidence that William H. Stiner & Son was either the importer, owner, consignee, or agent of the merchandise, is not such a protest as called upon the collector to review his assessment of duties; nor is such a protest sufficient to invoke the jurisdiction of the Board of General Appraisers for review of the collector's assessment.

To the same effect, see *Abegg et al.* v. *United States*, 71 Fed. 960.

However, appellant turns to section 2636(b) as affording a remedy by application for review, which view has been adopted by the majority as providing jurisdictional authority, relying upon the language of said subsection which reads:

* * * The division shall, after hearing argument on the part of any of the interested parties requesting to be heard, affirm, reverse, or modify the decision of the single judge or remand the case to such judge for further proceedings, * * *

apparently assuming that the phrase "interested parties" enabled appellant herein to invoke our jurisdiction. To so interpret subparagraphs (a) and (b) of section 2636 requires a distortion of the language of the section, which would lead to an unnatural interpretation of the law. It is obvious that the appellant herein was not an interested party in the reappraisement proceeding (*North American Asbestos Corp* v. *United States*, reappraisement 298362–A) wherein the interested parties were "the consignee or his agent," on the one hand, and "the collector" on the other.

In the case of *Cox & Fahner* (*Steel Union-Sheet Piling, Inc.*) *et al.* v. *United States*, 31 C.C.P.A. (Customs) 141, C.A.D. 264, one of the questions presented was whether the appellate division of the United States Customs Court had jurisdiction to entertain an application for review, it appearing that such application was premature. The court affirmed the judgment dismissing the application. In the course of its opinion, the court took occasion to say—

It is elementary that appeals from, or applications for review of, decisions of a lower court depend wholly upon statutory authority. Applications for review of decisions of a single judge in reappraisement proceedings are provided for by section 501 of the Tariff Act of 1930. Certain amendments to said section were made in the Customs Administrative Act of 1938, but such are not pertinent to the question before us.

The court then quoted section 501, *supra* (which, like section 2636 (b) of title 28 U.S.C., contains the language relied upon by appellant herein reading "after [hearing] argument on the part of any of the interested parties requesting to be heard" and so forth), and continued by stating—

It will be observed that the sole duty of the single judge under section 501, *supra*, is to "determine the value of the merchandise." *That is the only decision of the single judge contemplated by the section from which an application for review may be filed. * * * [Italics supplied.]

Everyone who is familiar with customs jurisprudence knows the traditional significance of the words in section 501 of the tariff act (now section 2631, title 28, United States Code), which directs a single judge in a reappraisement proceeding to "determine the value of the merchandise." Equally significant are the words in section 2636 (a) of title 28, United States Code, providing for an application for review of the decision of a single judge.

Historically, those provisions have been solely related to a determination of value in reappraisement proceedings. The appeal now before the court, however, has no relation to a valuation matter. It is a proceeding *sui generis*; it is an independent proceeding at law and not a part of the original civil case in which it arose. *In re Manufacturers Trading Corp.*, 194 Fed. 2d 948; *Michaelson* v. *United States*, 266 U.S. 42, 64, 65; *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418. The appeal in the case of *North American Asbestos Corp.* v. *United States*, *supra*, is still on the files of the court, partially tried and awaiting further action. The decision in that case will in no wise be affected by a determination of this case.

The interested parties to a reappraisement proceeding are naturally the plaintiff and defendant or appellant and appellee. The appellant in the present proceedings was none of those parties. In the reappraisement proceedings, he merely was counsel for the United States, which was one of the parties in interest. In the instant case, the appellant is neither the consignee, agent, or attorney, nor the collector or other person authorized by the Secretary of the Treasury to file this action. He appears in his individual capacity, and the mere fact that his appeal was filed by counsel representing the Department of Justice does not alter his legal status.

By no stretch of the imagination or logic can there be found in section 2636 the "clear statutory mandate," which must exist to found jurisdiction. *Carroll et al.* v. *United States, supra*.

The majority opinion seeks to minimize the force and effect of the *Carroll* case upon the ground that the issues there and here are different. Even though they are, the principle for which the *Carroll* case was cited, namely, that a statute granting jurisdiction to a court must be couched in unmistakable terms, is an accepted doctrine. Older cases established the same principle, notably *Farnsworth* v. *Territory of Montana*, 129 U.S. 104, and *Cross* v. *United States*, 145 U.S. 571.

In the cases of *Cox & Fahner* (*Steel Union-Sheet Piling, Inc.*) *et al.* v. *United States*, 31 C.C.P.A. (Customs) 141, C.A.D. 264, and *United States* v. *Thalson Co.*, 29 Cust. Ct. 545, A.R.D. 5, all of the proceedings were entitled in the reappraisement cases to which they refer and present no parallel here. The instant reappraisement litigation in which the independent criminal contempt proceeding and adjudication of contempt arose is still pending before the single judge who has jurisdiction of that appeal, and since those proceedings are still unfinished and no final decision has been rendered determining the value of the merchandise, no division of the Customs Court could possibly have jurisdiction on an application for review. In the opinion of the majority, it is said that section 2636(a) provides for the review of the decision of a single judge "in a reappraisement proceeding," followed by the observation that it does not provide for the review of the decision "of a reappraisement proceeding," suggesting that this difference in phraseology clearly implies that "had it been the intention of Congress to limit reviews to final determinations 'of a reappraisement proceeding,' the law would have so provided."

The suggestion that the difference in meaning between the words "in" and "of" in the above quotations is sufficient upon which to predicate jurisdiction is too tenuous a thread upon which to rest such an important procedural remedy and is contrary to the requirement in the *Carroll* case, *supra*, namely, that a "clear statutory mandate must exist to found jurisdiction."

Further, the opinion reads "The language involved herein is set forth in a clear and unambiguous manner and as such is not, in our opinion, subject to any other interpretation than that any interested person adversely affected by a final decision of a single judge rendered in a reappraisement proceeding might apply for review. That appellant is a person so affected hardly needs to be stated, and, as will be developed, *infra*, the contempt adjudication derived from the jurisdiction possessed by the court in a reappraisement proceeding."

It is difficult to accept this theory of the case if attention be given to the context of the provisions in *pari materia* with section 2636(a).

Section 2631 of title 28 U.S.C. reads as follows:

Every written appeal to the Customs Court for a reappraisement of merchandise shall be assigned to one of the judges of such court who shall after afford-

ing the parties an opportunity to be heard on the merits, *determine the value of such merchandise.* [Italics supplied.]

From the judgment which determines "the value of such merchandise," an application for review may be filed "by the collector or other person authorized by the Secretary of the Treasury" or "by the consignee, or his agent or attorney," pursuant to section 2636(a), title 28 U.S.C.

Section 2636(b) also clearly indicates that every application for a review by a division of three judges of a reappraisement proceeding shall be a review of the original judgment which determined the value of the merchandise.

The further provision in section 2636(b) that "The division shall, after hearing argument on the part of *any of the interested parties* requesting to be heard, affirm, reverse, or modify the decision of the single judge" [italics supplied] can not, as urged by counsel for appellant and adopted by the majority, enlarge the scope of section 2636(a) which limits the parties who may file an application for review to "the collector or other person authorized by the Secretary of the Treasury" or "the consignee, or his agent or attorney."

It can not be successfully argued that the appellant herein is either the collector or other person authorized by the Secretary of the Treasury. Neither was he an "interested" party in the reappraisement proceedings, entitled *"North American Asbestos Corp. v. United States."* He was there acting as counsel for the United States which was an interested party. He is presently appearing *in propria persona* as the appellant in a proceeding which is neither "in a reappraisement proceeding" nor "of a reappraisement proceeding."

Later in the majority opinion it is pointed out that in the course of a reappraisement proceeding "there may be other orders and rulings which are in fact collateral or incidental to the ultimate issue of value, but, nevertheless, final and conclusive upon the parties, in the absence of an immediate and direct appeal" and cases are cited in which various collateral issues were presented. The question is then posed whether a decision in a reappraisement proceeding is limited to a determination of value or may include other determinations which are incidental to such a proceeding, and cases are cited to illustrate the point, followed by the implication that nothing in the language of section 2636(b) "expressly or by implication limits that 'decision' to a determination of value."

As a matter of fact, however, in all of the cases cited upon this point, it should be borne in mind that all of the questions involved therein were concerned with a determination of the respective appeals for a reappraisement and finally resulted in a determination of the case.

The opinion makes a further observation that the Court of Customs and Patent Appeals "lacks jurisdiction to review a decision of a single judge sitting in reappraisement proceedings. *W. X. Huber Co. (J. J. Kessler)* v. *United States*, 21 C.C.P.A. (Customs) 30, T.D. 46366," and concludes from this "that a contempt adjudication is a decision of a single judge in a reappraisement proceeding, which this division has jurisdiction to review."

That statement begs the question. Obviously, the order of contempt herein, which is a separate and independent proceeding, can not properly be said to be a decision of a single judge "in a reappraisement proceeding."

Finally, I can not subscribe to the view expressed by the majority that "a denial of jurisdiction by this tribunal would leave appellant without opportunity to obtain judicial review of his summary conviction."

Nowhere has it been suggested that the appellant may not obtain a judicial review in this matter. The simple question before this court is whether the statute creating it has conferred jurisdiction upon it to review a contempt conviction, and it would be idle for this court to speculate where that jurisdiction may lie.

Further, the court seems to have adopted the nebulous theory advanced by counsel for appellant that "the application for review of the certificate, adjudication, and order of Judge Mollison was filed with the clerk of this court by George Cochran Doub, Assistant Attorney General, Civil Division, Customs Section, in his official capacity and by virtue of a determination by the Attorney General of the United States that the interests of the United States and of the contemnor herein are coincidental in this proceeding and that a review of the trial court's adjudication would serve the best interests of the United States."

That statement is predicated upon title 5 U.S.C., section 316, which outlines certain powers and duties of the Attorney General.

To say that the interests of the United States and the contemnor are coincidental is rather novel and can not be sustained in fact or in reason.

The Supreme Court has held that a criminal contempt committed in a Federal court is an offense against the United States. *United States* v. *Goldman*, 277 U.S. 229, *Pendergast* v. *United States*, 317 U.S. 412. That being so, it is, to say the least, anomalous to assert that the interests of the United States and the contemnor are coincidental. As a matter of fact, the United States and the contemnor should be regarded as adversary parties.

It is too well known to require citation of authority that whenever the Attorney General files an appeal in a reappraisement case it is on behalf of the United States.

In summation, it is my considered opinion, based upon judicial authority and logic, that the following findings and conclusions are firmly established:

1. Courts have an inherent power to punish for contempt.

2. A criminal contempt committed in a Federal court is an offense against the United States.

3. A criminal contempt proceeding is *sui generis*. It is an independent proceeding at law and not a part of the original civil case which was being tried when the contempt was committed.

4. The Government, the courts, and the people are interested in the prosecution of the offense.

5. A proceeding for criminal contempt unlike that for civil contempt is between the United States and the contemnor, and the judge is not a party thereto.

6. Jurisdiction may not be inferred, presumed, or conferred by the litigants. It is a privilege which can be granted only by the sovereign power. Furthermore, it must be granted in clear and unambiguous terms.

7. Neither the United States Customs Court nor any division thereof has appellate criminal jurisdiction. No statute has authorized the Customs Court to review on appeal an order and adjudication of guilt in a criminal contempt proceeding.

8. The Customs Court is a special statutory court of limited jurisdiction.

9. The basic statute upon which it was founded is the Customs Administrative Act of June 10, 1890 (26 Stat. 131, 136), which created its ancestor, the Board of General Appraisers. By that act, Congress lifted out of the United States Circuit Courts and District Courts that portion of customs jurisdiction relating to civil actions, leaving the criminal side in those courts.

10. In 1926, the name of the Board of General Appraisers was changed to that of the United States Customs Court (44 Stat. (2) 669) and the act expressly provided that "The jurisdiction, powers, and duties of said board, its subdivisions and its officers, and their appointment, including the designation of its presiding officers, and the immunities, tenure of office, powers, duties, rights, and privileges of the members of said board, shall remain the same as by existing law provided." In 1956, Congress ordained the Customs Court to be a constitutional court (70 Stat. 532), but nothing in that act clothed the court with criminal jurisdiction.

11. Section 2631 of title 28 U.S.C. directs a single judge in a reappraisement proceeding to "determine the value" of the merchandise.

12. Sections 1582, 2631, and 2636 of title 28 U.S.C. give authority solely for a review of final reappraisement proceedings determining the value of the merchandise.

13. Only those persons authorized by law in section 2636(a), title 28 U.S.C., may file an application for review. (Cf. 19 U.S.C., section 1514.)

14. Section 2636(b), title 28 U.S.C., can not be properly interpreted to enlarge the scope of section 2636(a) authorizing applications for review. The "interested parties" in section 2636(b) are those parties or privies to the reappraisement appeal. The contemnor was not a party in those proceedings. He was the attorney for the United States which was a party.

15. It is a matter of public history of which the court may take judicial notice that the United States is always a party in a reappraisement appeal or application for review.

16. The appellant appears here *in propria persona* in a case separate and apart from the reappraisement proceeding.

17. The statement in the majority opinion that the contemnor is without recourse if this court is without jurisdiction has no foundation in fact or law. Simply stated, the primary difficulty confronting the contemnor here is he has not selected the right forum.

The brief of counsel designated by the court ably and forcefully presents sound reason and authority which has not been successfully assailed demonstrating that this court is without jurisdiction herein.

For the reasons above stated, I would dismiss the appeal for lack of jurisdiction.